

**DEPARTMENT OF THE ARMY**
OFFICE OF THE ASSISTANT SECRETARY
CIVIL WORKS
108 ARMY PENTAGON
WASHINGTON DC 20310-0108

SACW                                                                                                    4 January 2021

MEMORANDUM FOR COMMANDING GENERAL, U.S. ARMY CORPS OF ENGINEERS

SUBJECT:  U.S. Army Corps of Engineers (USACE) Tribal Consultation Associated With A Draft Approved Jurisdictional Determination (AJD)

1. References:

    a. USACE Tribal Consultation Policy dated November 01, 2012, and associated references.

    b. Consultation and Coordination with Indian Tribal Governments, Executive Order 13175, dated November 06, 2000.

    c. Department of the Army American Indian and Alaska Native Policy dated October 24, 2012.

    d. Letter dated December 8, 2020 from Earthjustice to BG Helmlinger, Commanding General, Northwestern Division, U.S. Army Corps of Engineers, *et al.*, subject: Supplemental Letter on Clean Water Act Section 404 Permit No. SPL-2008-0816-MB for the Rosemont Copper Mine.

    e. Letter dated December 17, 2020 from COL Balten, Commander, Los Angeles District, U.S. Army Corps of Engineers, to Earthjustice, subject: Tribal Consultation Concerning HudBay Minerals' Approved Jurisdictional Determination Requests.

2. Purpose.  The purpose of this memorandum is to provide direction to the U.S. Army Corps of Engineers (USACE) on tribal consultation requirements when issuing an approved jurisdictional determination (AJD) and to direct that the letter dated December 17, 2020 (reference e) be rescinded immediately.

3. Background.  An AJD is issued by USACE as a public service.  AJDs perform a limited function to state the presence or absence of waters of the United States on a parcel, or provide a written statement and map identifying the limits of waters of the United States on a parcel (s*ee* 33 CFR 331.2}.  As such, AJDs simply determine whether the criteria of the rule defining waters of the United States is satisfied for a given parcel, which would then confer federal jurisdiction over that parcel.  A corollary to this is that factors unrelated to whether the criteria of the applicable waters of the United States rule is satisfied for a parcel, such as the assertion that a finding (or lack thereof) of jurisdiction would have effects on a tribe, is irrelevant to the determination of whether the parcel is in fact jurisdictional, which is the sole function performed by an AJD.  In *U.S. Army Corps of Engineers v. Hawkes Co.*, 136 S.Ct. 1807 (2016), the Supreme Court held that AJDs constitute final agency action and are therefore subject to judicial review. *Id.* at 1814; however, the fact that AJDs constitute final agency action does not necessitate the conclusion that tribal consultation must therefore be undertaken.  The federal government regularly takes final action for which it does not consult with tribes if such action

SACW
SUBJECT:  U.S. Army Corps of Engineers (USACE) Tribal Consultation Associated With A Draft Approved Jurisdictional Determination (AJD)

does not have an effect on tribes.  To accept the premise that *Hawkes* compels consultation simply because an AJD is a final agency action, would require concluding that USACE is bound to consult with tribes on matters for which consultation can have no functional impact because its discretion is constrained by law.  The Supreme Court has held consultation is not required under such circumstances in the context of the Endangered Species Act.  *See National Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 671 (2007) (holding that an agency lacks authority to add separate prerequisites when considering whether enumerated statutory criteria were satisfied); *see also Alaska Wilderness League v. Jewell*, 788 F.3d 1212, 1225 (9th Cir. 2015) ("[D]etermining *whether* the statutory criteria have been achieved does not trigger ESA's consultation requirement") (emphasis in original).  This is instructive with respect to tribal consultation on AJDs because USACE similarly lacks discretion to consider factors other than the criteria set forth in the rule defining waters of the United States when determining whether a parcel contains jurisdictional waters.

4.  The Navigable Waters Protection Rule (NWPR) (33 CFR 328.3) sets forth the definition for what is/is not jurisdictional under the Clean Water Act (CWA).[1]  There was substantial tribal consultation during the rulemaking for the NWPR, which was the appropriate time for tribes to provide information as to which waters they thought should be jurisdictional under the CWA.  Aquatic resources may also be subject to the Rivers and Harbors Act of 1899 (RHA).  Aquatic resources on a parcel are already subject to the CWA and/or RHA, or not, based on the law.  An AJD merely provides the public with specific information on the status of federal jurisdiction for the particular aquatic resources on the subject parcel for future planning and decision-making purposes. Moreover, USACE lacks authority to consider factors other than whether waters on the parcel meet the definition of waters of the United States when determining whether it has jurisdiction over the parcel, which would render any tribal consultation at the AJD stage as moot.

5.  Existing Tribal Consultation Policies.  Under the various references listed in paragraph 1, each agency shall consult, to the greatest extent practicable and to the extent permitted by law, with tribal governments prior to taking actions that affect federally recognized tribal governments.  An AJD is not an action that "affects" tribal governments.  Although the Tribal Consultation Policy (paragraph 1.a) states that, "Requests for consultation by a Tribe to USACE will be honored," the intent behind what triggers consultation is laid out in the references in paragraph 1 and would not include an AJD action.  The relevant action that may affect tribes is determining the definition of which waters are waters of the United States rather than a separate determination by USACE that a given water meets the regulatory definition.  As stated in the previous section, there was fulsome tribal consultation on the NWPR which provides the current definition.

6.  For example, under Executive Order 13175 (paragraph 1.b), consultation and coordination with Tribal Governments occurs during the development of Federal policy.  Policies that have tribal implications which trigger such requirements "refers to regulations, legislative comments or proposed legislation, and other policy statements or actions that have substantial direct effects on one or more Indian tribes, on the relationship between the Federal Government and Indian tribes, or on the distribution of power and responsibilities between the Federal

---

[1] The NWPR is currently enjoined in the State of Colorado.

SACW
SUBJECT: U.S. Army Corps of Engineers (USACE) Tribal Consultation Associated With A Draft Approved Jurisdictional Determination (AJD)

Government and Indian tribes." An AJD does not fall under one of those categories as described above in paragraph 3.

7. The DoD policy in paragraph 1.c. states that the policy "recognizes the importance of understanding and addressing the concerns of Federally-recognized Tribes prior to reaching decisions on matters that may have the potential to significantly affect tribal rights, tribal lands or protected tribal resources." In addition, under paragraph 1.a, consultation is defined as, "Open, timely, meaningful, collaborative and effective deliberative communication process that emphasizes trust, respect and shared responsibility. To the extent practicable and permitted by law, consultation works toward mutual consensus and begins at the earliest planning stages, before decisions are made and actions are taken; an active and respectful dialogue concerning actions taken by the USACE that may significantly affect tribal resources, tribal rights (including treaty rights) or Indian lands." The same Tribal Consultation Policy lays out that "individual projects, programs, permit applications, real estate actions, promulgation of regulations and policies" would be actions that trigger tribal consultation, and an AJD is not included as a similar action to those listed. As provided in paragraph 3, an AJD has no room for deliberation or "shared responsibility" and there is no option for a "mutual consensus." An AJD is not an action that could "significantly affect tribal resources, tribal rights…or Indian lands." There is no opportunity for tribal input on USACE's determination other than if a tribe wishes to provide information they believe may help inform USACE's AJD as USACE uses various sources of information and data to inform their determination; however, such information sharing can be provided outside of the consultation arena.

8. Directive. In light of the foregoing, I direct the Los Angeles District Commander's letter initiating tribal consultation on the draft AJD for the Rosemont Copper Mine Project be rescinded. I further direct that, as a matter of nationwide programmatic policy, USACE shall not initiate tribal consultation on any future AJDs. Should a tribe request consultation with respect to a given project, such consultation should be undertaken at the permit stage rather than on any AJD that may be requested.

9. Under no circumstances shall the guidance and processes established in this memorandum be modified, supplemented, amended, or rescinded, directly or indirectly, nor shall USACE take action not in accordance with the guidance herein, without the express written approval from the ASA(CW).

10. Questions regarding this memorandum may be directed to Stacey Jensen, at 703-695-6791 or stacey.m.jensen.civ@mail.mil.

R.D. JAMES
Assistant Secretary of the Army
(Civil Works)

CF:
DCG-CEO, USACE
DCW, USACE
CECC-ZA, USACE

3